IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT IN JUNEAU

JONATHAN CORSON

    Plaintiff,

v.

JAMHI HEALTH AND WELLNESS, INC.

    Defendant,

CASE NOs: 1JU-19-_____ CI

## COMPLAINT

Comes now Plaintiff Jonathan Corson, through undersigned counsel, and complains and alleges as follows:

### JURISDICTION

1. This is a civil assessment for a violation of federal and state laws preventing wrongful termination.

2. Subject matter jurisdiction is proper pursuant to Alaska statutory and common law, including AS 22.15.030 and AS 09.05.015.

3. Personal jurisdiction is proper because the Defendant was a resident of Alaska at the time of the violation.

4. Venue is properly laid in the First Judicial District pursuant to Alaska Stat. 22.15.030 and Alaska Civil Rule 3(c) because the claims arose in the First Judicial District.

Law Offices of Chris Peloso
533 Main Street, Juneau, Alaska 99801
(703) 403-0247 | chris@pelosolaw.com

Page 1 of 9     Corson v. JAMHI 1JU-19-_____ CI
Complaint
Case 1:19-cv-00016-HRH   Document 1-1   Filed 11/12/19   Page 1 of 9

## PARTIES

5. Plaintiff Jonathan Corson is a resident of the State of Alaska.

6. Defendant JAMHI Health & Wellness, Inc. ("JAMHI") is a corporation located in the State of Alaska.

7. Upon information and belief, defendant JAMHI is located at 3406 Glacier Hwy. Juneau, AK 99801.

8. Defendant is a "person" as defined by Alaska Stat. 46.03.900(18).

## GENERAL FACTUAL ALLEGATIONS

9. Mr. Corson's employment with JAMHI Health and Wellness began on Monday, September 10, 2018

10. Mr. Corson relocated from Cincinnati, OH, to Juneau, AK, resigning from an secure position with Hamilton County Developmental Disabilities Services to accept a position as Assistant Director of Residential Services with JAMHI.

11. Mr. Corson incurred significant relocation costs in excess of $10,000 to accept this position. As part of Mr. Corson's contractual obligations, JAMHI offered partial reimbursement for a two year commitment with the organization.

12. During his time with JAMHI, Mr. Corson oversaw and supervised the workforce of approximately 20 employees and the coordination of services for approximately 17 clients in residential assisted living services and approximately 20 clients in supported living arrangements. Mr. Corson also designed a training curriculum and

supervised an additional representative from the agency to act as a training specialist for all residential caregivers.

13. Mr. Corson's original job description did not accurately reflect these obligations. For example, his original contractual obligations were for the oversight of only four residential living specialists and two case managers, and to oversee their caseloads.

14. Mr. Corson made numerous attempts to renegotiate the terms of his employment agreement with JAMHI, but he was not provided a revised job description to account for an accurate reflection of his job duties.

15. Mr. Corson maintained an outstanding reputation among subordinates, co-workers, and clients during the time of his employment. Every verbal or written notice Mr. Corson's received related to his job performance was "exemplary."

16. On Monday, February 4, 2019. JAMHI's "Lemon Creek" facility sustained a "catastrophic event." Approximately 11 group home/assisted living clients were displaced by a malfunctioning fire suppressant system. As a result, the homes were flooded and clients were displaced from their living arrangements. During this crisis event and in the days and weeks to follow, Mr. Corson aided clients, staff and convened with leadership to identify temporary housing. The goal being to ensure that the health and safety needs of clients were met, while at the same time sustaining a viable Medicaid funded assisted living program.

17. As a consequence of this event, Mr. Corson convened with HR, representatives from quality assurance team, and leadership on multiple occasions in March

Law Offices of Chris Peloso
533 Main Street, Juneau, Alaska 99801
(703) 403-0247 | chris@pelosolaw.com

2019 regarding the viability of the residential assisted living program, and whether the long term care of client needs and rights of individuals served were adequately being met under state/federal guidelines. Since these services are funded by federal Medicaid, any fraudulent contracting practices related to how these services are provided and billed would be covered by the federal False Claims Act.

18. Mr. Corson raised significant concerns about program policy and procedures outlined in JAMHI's treatment/service model and whether they were sufficiently being met. Mr. Corson outlined these concerns to his immediate supervisor, supervising clinician, and HR director on numerous occasions, stating that these decisions were based out of provider convenience and not from a multi-factored assessment, or data driven discussion about the current, individual specific needs of each client.

19. At this time, continuous staffing shortages began to occur, as well as a significant rise in employee attrition. Mr. Corson consulted with his immediate supervisor and HR on multiple occasions about how to resolve this issue. Each home required 24/7 sight and sound coverage of clients in the assisted living program. Without staffing to support the needs of clients, Mr. Corson and his immediate supervisor were tasked with stepping in to provide direct care. This resulted in an exponential increase in work hours, that eventually compromised Mr. Corson's mental and physical health.

20. Mr. Corson approached HR Director Kyla Allred on March 21, 2019 about concerns with how these challenges were having a compounding effect on the mental and physical health of JAMHI staff, and that it would not be possible for him to sustain an

indefinite "on-call" status for the remainder of the week. Mr. Corson was advised by Ms. Allred that he was required to fulfill this duty, despite his deteriorating health condition. Despite these concerns, Mr. Corson reported to work and fulfilled his duties, as required.

21. On March 23, 2019, Mr. Corson completed a required on-call, 25 hour shift without rest. Mr. Corson became seriously ill shortly thereafter and sought the guidance of his doctor on March 26, 2019. The earliest Mr. Corson's doctor was willing to release him was on March 29, 2019.

22. Mr. Corson had scheduled with HR and immediate supervisor, to return to work on April 1, 2019. Upon arriving to work, Mr. Corson provided return to work documentation stating that "work hours were not to exceed 40 hour a week for next 30 days and upon re-evaluation from doctor not to increase workload." Upon providing this documentation, Mr. Corson was notified that he was being terminated and that his services were no longer needed. A letter was prepared by Mrs. Allred stating notice of termination dated March 28, 2019, implying that the decision to terminate was given prior to consultation with Mr. Corson's doctor/return to work date.

## FIRST CAUSE OF ACTION: RETALIATORY DISCHARGE IN VIOLATION OF FALSE CLAIMS ACT
### 31 U.S.C §§ 3729-3733

23. Paragraphs 1 through 22 are incorporated herein by reference.

24. By exposing and making a good faith report of fraudulent contracting practices, Mr. Corson engaged in activity protected by the False Claims Act.

Page 5 of 9    Corson v. JAMHI 1JU-19-_____ CI
Complaint
Case 1:19-cv-00016-HRH   Document 1-1   Filed 11/12/19   Page 5 of 9

25. Mr. Corson was wrongfully terminated in retaliation for engaging in that protected activity.

26. JAMHI's wrongful termination violated the False Claims Act and caused Mr. Corson to suffer damages in excess of $100,000, the precise amount to be proved at trial.

27. Mr. Corson is entitled to all relief afforded to him under the False Claims Act.

## SECOND CAUSE OF ACTION:
## WRONGFUL TERMINATION IN VIOLATION OF AS 18.80.220

28. Paragraphs 1 through 27 are incorporated herein by reference.

29. JAMHI terminated Mr. Corson after he reported conduct that is prohibited by Alaska Stat. 18.80.200–.280, and such retaliatory discharge violates Alaska Stat. 18.20.220(a)(4).

30. Mr. Corson is entitled to all relief afforded by Alaska law.

## THIRD CAUSE OF ACTION:
## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

31. Paragraphs 1 through 30 are incorporated herein by reference.

32. JAMHI's actions including retaliating against Mr. Corson for reporting and/or opposing unlawful conduct, as well as the other things discussed above, constitute the tort of wrongful termination in violation of the public policy of the State of Alaska.

33. As a result of JAMHI's wrongful termination in violation of public policy, Mr. Corson suffered damages in excess of $100,000, the precise amount to be proved at trial and he is entitled to all relief afforded by Alaska law.

## FOURTH CAUSE OF ACTION:
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

34. Paragraphs 1 through 33 are incorporated herein by reference.

35. In Alaska, all employment contracts contain an implied covenant of good faith and fair dealing.

36. JAMHI had a policy that expressly required its employees to report.

37. JAMHI breached the covenant of good faith and fair dealing when it terminated Mr. Corson without cause and in retaliation after he complied with the company policy and reported his concerns.

38. As a result of JAMHI's breach of the covenant of good faith and fair dealing, Mr. Corson suffered damages, in excess of $100,000, the precise amount to be proven at trial, and he is entitled to all relief afforded by Alaska law.

## FIFTH CAUSE OF ACTION:
## PUNITIVE DAMAGES

39. Paragraphs 1 through 38 are incorporated herein by reference.

40. JAMHI's conduct in this matter was outrageous, including acts done with malice or bad motives.

41. JAMHI's conduct evidenced reckless indifference to the interest of another person, as well as the wellbeing of their own patients.

42. In order to punish and deter such wrongful conduct, JAMHI should be ordered to pay punitive damages in an amount to be proven at trial.

Page 7 of 9    Corson v. JAMHI 1JU-19-_____ CI
Complaint
Case 1:19-cv-00016-HRH   Document 1-1   Filed 11/12/19   Page 7 of 9

## RELIEF SOUGHT

WHEREFORE, Plaintiff asks this Court:

a. to adjudge and decree that Defendant has engaged in conduct alleged herein and to enter a judgment in favor of the Plaintiff and against Defendant;

b. to award all statutorily authorized compensatory damages, as well as punitive damages and incidental damages in an amount to be determined at trial.

c. to award prejudgment interest, full reasonable attorneys' fees, and the costs of this action in accordance with Alaska Rule of Civil Procedure 82(b);

d. to grant such other and additional relief as may be appropriate.

DATED this 25th day of September, 2019.

LAW OFFICES OF CHRIS PELOSO

By: _____

Chris Peloso, 1205052
Counsel for Jonathan Corson

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2019, a true and correct copy of the foregoing document was served on:

David Branding,
Registered Agent
JAMHI Health & Wellness, Inc.
3406 Glacier Hwy.
Juneau, AK 99801

_[signature]_

CHRIS PELOSO

Law Offices of Chris Peloso
533 Main Street, Juneau, Alaska 99801
(703) 403-0247 | chris@pelosolaw.com